**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| RONALD CARTER | : |
|    Plaintiff | : |
| v | :  Civil Action No. JFM-06-1755 |
| TEWELDE ZERABACH, *et al.* | : |
|    Defendants | : |

o0o

**MEMORANDUM**

Pending in the above-captioned civil rights case are defendants' motions to dismiss or for summary judgment. Papers No. 12 and 16. Plaintiff filed an opposition to the motions which was docketed as a motion for appointment of counsel. Paper No. 18. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. For the reasons that follow, the motions to dismiss or for summary judgment, construed as motions for summary judgment, will be granted.

Background and Allegations

Plaintiff alleges that he has frequent seizures because he is not being provided with effective medication to control them. Paper No. 1. Plaintiff claims that phenobarbital is an effective medication for his seizure disorder, but medical staff refuse to prescribe it for him, as a result, he is injured on a regular basis when he falls during seizures.[1]

Defendants assert that plaintiff's claim simply reflects his disagreement with the choice of medical care provided. Paper No. 12. They explain that plaintiff is provided with anticonvulsant medications including Dilantin, Tegretol and Primidone. Paper No. 12 at Ex. A. In order to address

---

[1] Plaintiff's claim that his assignment to Maryland Correctional Adjustment Center was inappropriate in light of his seizure disorder was dismissed because it was previously litigated. Paper No. 3; *See Carter v. Dotson*, Civil Action No. JFM-05-2522 (D. Md. 2005).

plaintiff's breakthrough seizures, dosages of these medications were increased on April 19, 2006. *Id*. When plaintiff was seen on June 9, 2006, in the Neurology Chronic Care Clinic, it was noted that he rarely took his medications as prescribed and that prison staff frequently found the medication provided to plaintiff hidden in his cell. *Id*. Additionally, many of the seizures and episodes of loss of balance reported by plaintiff were not witnessed by staff. *Id*. During the June 9, 2006 evaluation, plaintiff continued to insist that phenobarbital is the only medication that controls his seizures. Defendants note, however, that phenobarbital is a metabolite of one of the medications plaintiff receives, and that phenobarbital is a controlled substance which is not prescribed to inmates at MCAC. *Id.*

On June 21, 2006, plaintiff was seen in the infirmary after he claimed he had a seizure and struck his head on a bedframe. *Id*. Plaintiff had a swollen area on his forehead, slurred speech, an unsteady gait, and was unable to recall details of the episode. On June 23, 2006, blood work revealed plaintiff's Dilantin level was higher than therapeutically necessary while his Tegretol level was lower than therapeutic, and his phenobarbital level was within therapeutic range. In order to correct the Dilantin level, Dr. Tewelde ordered the medication withheld for three days, to be restared once blood work revealed a return to normal range. A repeat blood test performed on June 26, 2006, established that all medications were within therapeutic range.

On two occasions, June 23 and 25, 2006, medical staff responded to a call from correctional staff indicating that plaintiff required medical attention for a seizure. *Id*. Upon arriving at plaintiff's housing unit, they saw that plaintiff was fully alert, talking to staff, and exhibiting no signs or symptoms evidencing a seizure.

Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other  facts immaterial."  *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment

3

> motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact issue.'"  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Analysis

In order to state an Eighth Amendment constitutional claim for denial of medical care, plaintiff must demonstrate that defendants' acts (or failures to act) amounted to deliberate indifference to his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted).  "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851.  Reckless disregard occurs when a defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge

4

of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Furthermore, mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

"'[B]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U. S. 1, 9 (1992)). "[A]n injury or condition is 'serious' only if it is 'life threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)). In determining whether an alleged deprivation of medical care amounts to a constitutional violation, courts must consider the severity of the medical problem, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the lack of medical attention. *Burns v. Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (D. N. Ill. 1984) (citation omitted).

Plaintiff's allegations as they pertain to defendant Dotson are based solely upon vicarious liability, otherwise known as the doctrine of *respondeat superior*. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D. Md., October 22, 1992), *citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E. D .Va. 1991). There is no evidence that Warden Dotson participated in any of the decision regarding plaintiff's medical care, and thus, he is dismissed from this lawsuit.

Plaintiff's claim against Dr. Tewelde does not rise to a constitutional level. While it is possible that a constitutional claim could arise where prescribed medication is so ineffective that it is tantamount to providing no treatment, such is not the case here. There is no objective evidence that plaintiff's preference for phenobarbital is medically warranted or that it would be more effective than the medications provided. Indeed, the evidence produced by defendants suggests that it is plaintiff's non-compliance with prescribed medication that is the likely cause of his continued seizures. Accordingly, defendant Tewelde is entitled to summary judgment in his favor.

A separate order follows.


April 18, 2007                                          /s/
Date                                                    J. Frederick Motz
                                                        United States District Judge